IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | |
|---|---|
| In the Matter of the Extradition of<br><br>DŽEVAD PAJAZETOVIĆ | Case No. 4:21-MC-014<br><br>Filed Under Seal |

COMPLAINT
(18 U.S.C. §3184)

I, the undersigned Assistant United States Attorney, being duly sworn, state on information and belief that the following is true and correct:

1. In this matter, I represent the United States in fulfilling its treaty obligation to the Federation of Bosnia and Herzegovina ("Bosnia").

2. There is an extradition treaty in force between the United States and Bosnia: Treaty Between the United States and Serbia for the Mutual Extradition of Fugitives from Justice, U.S.-Yugo., Oct. 25, 1901, 32 Stat. 1890 (hereinafter, "the Treaty").

3. Pursuant to the Treaty, Bosnia has submitted a formal request through diplomatic channels for the extradition of Dževad PAJAZETOVIĆ ("PAJAZETOVIĆ").

4. According to the information provided by the Government of Bosnia, PAJAZETOVIĆ was charged and convicted of murder in violation of Article 171, paragraph 2, line 6 of the Criminal Code of the Federation of Bosnia and Herzegovina.

5. This offense was committed within the jurisdiction of Bosnia. On October 20, 1999, the Cantonal Court in Bihać convicted PAJAZETOVIĆ of murder



FILED
By: Clerk's Office, Southern District of Iowa
1:34 pm, Feb 24 2021

and sentenced him to 15 years' imprisonment. Pursuant to an appeal filed by PAJAZETOVIĆ, the Supreme Court of Bosnia upheld his conviction but reduced his sentence to 11 years' imprisonment on December 12, 2000. On December 19, 2000, a judge for the Cantonal Court in Bihać ordered the execution of PAJAZETOVIĆ's 11-year prison sentence.

6. Bosnia presents the following facts in support of its criminal charges and extradition request:

On October 24, 1994, PAJAZETOVIĆ, who was a member of a military unit responsible for guarding Bosnia's border with Croatia, illegally attempted to bring 200 liters of fuel from Croatia into Bosnia. Derviš Okić ("Okić"), a Bosnia and Herzegovina military police officer guarding the border, stopped PAJAZETOVIĆ and demanded that he hand over 20 liters for the brigade. PAJAZETOVIĆ refused, and Okić then fired three warning shots into the ground in front of PAJAZETOVIĆ. In response, PAJAZETOVIĆ fatally shot Okić.

Witness Senad Kličić, said that Okić was performing his duties as a military police officer, whose duties included ordering the police to prevent people from smuggling items across the border.

Witness Jasmin Čaušević ("Čaušević") saw PAJAZETOVIĆ carrying fuel and a rifle, Okić asking whose fuel it was, and Okić telling PAJAZETOVIĆ that the fuel would be confiscated and taken to the command post. Čaušević was walking away when PAJAZETOVIĆ refused Okić's demand to surrender the fuel, and the two men

started arguing. Čaušević turned back and saw both Okić and PAJAZETOVIĆ cock their rifles, and he then heard shooting. Čaušević said that both men fired their weapons, but he could not tell in which direction they shot. Čaušević then called his brother over, and they went to the scene, where PAJAZETOVIĆ pointed his rifle at them and said it was not his fault. Čaušević's brother took the rifle away from PAJAZETOVIĆ, who was taken to the hospital.

Witness Samir Šakanović, said that he knew Okić had tried to confiscate the fuel from PAJAZETOVIĆ, and that the two had a bad relationship. He did not see the incident but heard shots from the command post. When he got to the scene Okić was dead and PAJAZETOVIĆ pointed a rifle at him and said he was wounded.

Witnesses Mehmed Pajazetovič and Nijaz Čaušević said they heard shots being fired from inside a car parked nearby. When they got to the scene Okić was dead and PAJAZETOVIĆ pointed his rifle at them and said he was wounded.

Finally, witness Fikret Miljković said that he was in a house nearby when he heard shots being fired from the direction of the border. PAJAZETOVIĆ was later brought to his car with a leg wound. This witness also claimed that he saw Okić's body, which was taken to the hospital morgue.

According to medical records, Okić's body was examined and found to have gunshot wounds near the third and fourth rib on the right and an exit wound near the left shoulder blade. There was a second entry gunshot wound on the outside of the right knee, and another exit wound under the left knee.

4:21-MC-014

PAJAZETOVIĆ was arrested, released from custody, and fled Bosnia prior to trial. The Cantonal Court in Bihać conducted a criminal trial against PAJAZETOVIĆ. The proceedings were conducted in absentia, but PAJAZETOVIĆ was represented by counsel.

According to PAJAZETOVIĆ's defense presented at trial, Okić saw PAJAZETOVIĆ pouring fuel into a container and asked for 10% without specifying whether he wanted it for himself or for the brigade. After arguing about the fuel, PAJAZETOVIĆ told Okić he could take all the fuel and started walking away, when he heard a rifle click and Okić swearing at him. PAJAZETOVIĆ heard about ten gunshots and noticed that he was injured in his left hip. When he told Okić that he was hit, the officer threatened to kill him and pointed the rifle at him. PAJAZETOVIĆ then closed his eyes and pulled the trigger of his own rifle. He said that he did not know what happened to Okić.

After hearing the testimony of several witnesses and considering PAJAZETOVIĆ's defense, Cantonal Court in Bihać convicted PAJAZETOVIĆ and sentenced him to fifteen years' imprisonment. PAJAZETOVIĆ, again proceeding with counsel, filed an appeal to the Supreme Court. The Supreme Court upheld the conviction but reduced the sentence to eleven years' imprisonment upon concluding that the trial court had failed to give enough weight to Okić's role in the dispute. A judge for the Cantonal Court in Bihać ordered the execution of PAJAZETOVIĆ's 11-year prison sentence on December 19, 2000.

7.  The offense for which PAJAZETOVIĆ's extradition is sought is provided

for in Article II of the Treaty.

8.  PAJAZETOVIĆ is believed to reside at 65 SE Waddell Way, Waukee, IA 50263, which is within the jurisdiction of this Court.

9.  Tom Heinemann, an attorney in the Office of the Legal Adviser of the U.S. Department of State, has provided the U.S. Department of Justice with a copy of the Treaty and a declaration authenticating a copy of the diplomatic note by which the request for extradition was made. The declaration states that the offense for which extradition is sought is covered by the Treaty, and confirms that the documents supporting the request for extradition are properly certified by the principal U.S. diplomatic or consular officer in Bosnia, in accordance with 18 U.S.C. § 3190, so as to enable them to be received into evidence.

10. The declaration from the U.S. Department of State with its attachments, including a copy of the diplomatic note from Bosnia, a copy of the Treaty, and the certified documents submitted in support of the request, (marked collectively as Government's Exhibit #1) are filed with this Complaint and incorporated by reference herein.

11. PAJAZETOVIĆ would be likely to flee if he learned of the existence of a warrant for his arrest.

WHEREFORE, the undersigned requests that a warrant for the arrest of the aforenamed person be issued in accordance with the extradition treaty between the United States and Bosnia and 18 U.S.C. § 3184, so that the fugitive may be arrested

4:21-MC-014

and brought before this court to the end that the evidence of criminality may be heard and considered and that this complaint and the warrant be placed under the seal of the Court until such time as the warrant is executed.

_____
Virginia M. Bruner
Assistant United States Attorney

Sworn to before me and subscribed in my presence this 24th day of February 2021, at Des Moines, IA 1:24 pm.

_____
Celeste F. Bremer
United States Magistrate Judge
Southern District of Iowa