# DECLARATION OF TOM HEINEMANN

I, Tom Heinemann, hereby declare and say as follows:

1. I am an Attorney Adviser in the Office of the Legal Adviser for the Department of State, Washington, DC. This office has responsibility for extradition requests within the Department of State, and I am charged with the extradition case of Dzevad Pajazetovic. I make the following statements based upon my personal knowledge and upon information made available to me in the performance of my official duties.

2. The relevant and applicable treaty provisions in full force and effect between the United States and Bosnia and Herzegovina are found in the Treaty Between the United States of America and Servia for the Mutual Extradition of Fugitives from Justice, signed October 25, 1901 and entered into force June 12, 1902 (the "Treaty"). This Treaty was in force with the former Yugoslavia. Since the dissolution of Yugoslavia, this Treaty has applied to Bosnia and Herzegovina as a successor state. A copy of the Treaty is attached to this declaration.

3. In accordance with the provisions of the Treaty, the Embassy of Bosnia and Herzegovina has submitted Diplomatic Note number 123-22-14-1-1171/16, dated September 29, 2016, requesting the extradition of Dzevad Pajazetovic. The Embassy submitted supplemental information in the case under cover of Embassy Note number 123-22-14-1-1171/16, dated December 4th, 2018. Copies of both notes are attached to this declaration.

4. The offense for which extradition is sought is covered by Article II of the Treaty.

5. The Government of the United States provides legal representation in United States courts for Bosnia and Herzegovina in its extradition requests, and Bosnia and Herzegovina provides legal representation in its courts for extradition requests made by the United States.

6. The documents submitted by Bosnia and Herzegovina in support of its extradition request were certified on September 23, 2016 by Corey M. Gonzalez, Consul of the United States

Embassy in Sarajevo, in accordance with Title 18 United States Code, Section 3190. Mr. Gonzalez, at the time of the certification, was the principal consular officer of the United States in Bosnia and Herzegovina. The supplementary documents submitted in support of the extradition request were certified on November 28, 2018 by Scott Norris, Consul of the United States Embassy in Sarajevo, in accordance with Title 18 United States Code, Section 3190. Mr. Norris, at the time of the certification, was the principal consular officer of the United States in Bosnia and Herzegovina.

I declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed in Santa Fe, New Mexico on December 7th, 2020

_____

TOM HEINEMANN

Attachments:

1. Copy of Notes
2. Copy of Treaty



**EMBASSY OF BOSNIA AND HERZEGOVINA**
WASHINGTON, D.C.

L/LEI
2016 OCT -3 A 10: 56
DEPARTMENT OF STATE

*No. 123-22-14-1-1171/16*

The Embassy of Bosnia and Herzegovina to the United States of America presents its compliments to the United States Department of State and has the honor to forward the request for the extradition of Mr. DŽEVAD PAJAZETOVIĆ, son of Mujo, citizen of Bosnia and Herzegovina, born on October 5, 1962 in Velika Kladuša, as submitted by the Ministry of Justice of Bosnia and Herzegovina. The documentation pertained to the said request has been certified at the United States Embassy in Sarajevo in accordance with the standard practice.

The Embassy of Bosnia and Herzegovina kindly ask for the United States Department of State to forward the above mentioned request to the United States Department of Justice.

The Embassy of Bosnia and Herzegovina to the United States of America avails itself of this opportunity to renew to the United States Department of State the assurances of its highest consideration.

Washington, D.C.
September 29, 2016

**United States Department of State**
**Washington, D.C.**



# EMBASSY OF BOSNIA AND HERZEGOVINA
WASHINGTON, D.C.

*No. 123-22-14-1-1171-1/16*

L/LEI
2018 DEC -4 P 3:05
DEPARTMENT OF STATE

*The Embassy of Bosnia and Herzegovina to the United States of America presents its compliments to the United States Department of State and with reference to the note No. 123-22-14-1-1171/16 dated September 29th, 2016 has the honor to forward the additional extradition documents for the extradition of Mr. DŽEVAD PAJAZETOVIĆ, citizen of Bosnia and Herzegovina. The documentation has been certified at the United States Embassy in Sarajevo in accordance with the standard practice.*

*Esteemed United States Department of State is kindly asked to forward the above mentioned documents to the Ministry of Justice of the United States of America, with reference on its No. 95-100-25337 of January 27th, 2017.*

*The Embassy of Bosnia and Herzegovina to the United States of America avails itself of this opportunity to renew to the United States Department of State the assurances of its highest consideration.*



*Washington, DC*
*December 4th, 2018*

**United States Department of State**
**Washington, DC**

2109 E Street NW, Washington, DC 20037 • Phone: (202) 337-1500, Fax: (202) 337-1502
www.bhembassy.org • e-mail: info@bhembassy.org
EXT-PAJAZETOVIC-0046

# YUGOSLAVIA

Extradition treaty. Signed at Belgrade October 25, 1901; entered into force June 12, 1902.

32 Stat. 1890; TS 406; 12 Bevans 1238.     950.3

EXT-PAJAZETOVIC-0047

# EXTRADITION

*Treaty signed at Belgrade for the United States and Serbia October 25, 1901*
*Senate advice and consent to ratification January 27, 1902*
*Ratified by the President of the United States March 7, 1902*
*Ratified by Serbia March 17, 1902*
*Ratifications exchanged at Belgrade May 13, 1902*
*Proclaimed by the President of the United States May 17, 1902*
*Entered into force June 12, 1902*

32 Stat. 1890; Treaty Series 406

The United States of America and His Majesty the King of Servia, being desirous to confirm their friendly relations and to promote the cause of Justice, have resolved to conclude a treaty for the extradition of fugitives from justice between the United States of America and the Kingdom of Servia, and have appointed for that purpose the following Plenipotentiaries:

The President of the United States of America, Charles S. Francis, Envoy Extraordinary and Minister Plenipotentiary to His Majesty the King of Servia.

His Majesty the King of Servia, M. Michel V. Vouïtch, President of His Council of Ministers, Minister for Foreign Affairs, Senator, Grand Officer of the Order of Milosh the Great, Grand Cross of the Order of Takovo, Officer of the Order of the White Eagle, etc. etc.,

who, after having communicated to each other their respective full powers, found in good and due form, have agreed upon and concluded the following articles:

### ARTICLE I

The Government of the United States and the Government of Servia mutually agree to deliver up persons who, having been charged with or convicted of any of the crimes and offenses specified in the following article, committed within the jurisdiction of one of the high contracting parties, shall seek an asylum or be found within the territories of the other: Provided, that this shall only be done upon such evidence of criminality as, according to

the laws of the place where the fugitive or person so charged shall be found, would justify his or her apprehension and commitment for trial if the crime or offense had been committed there.

### ARTICLE II

Extradition shall be granted for the following crimes and offenses:

1. Murder, comprehending assassination, parricide, infanticide, and poisoning; attempt to commit murder; manslaughter, when voluntary.
2. Arson.
3. Robbery, defined to be the act of feloniously and forcibly taking from person of another money or goods, by violence or putting him in fear; burglary, defined to be the act of breaking, and entering by night, into the dwelling house of another, with intent to commit felony; housebreaking or shopbreaking.
4. Forgery, or the utterance of forged papers; the forgery or falsification of official acts of government, of public authorities, or of courts of justice, or the utterance of the thing forged or falsified.
5. The counterfeiting, falsifying or altering of money, whether coin or paper, or of instruments of debt created by national, state, provincial, or municipal governments, or of coupons thereof, or of banknotes, or the utterance or circulation of the same; or the counterfeiting, falsifying or altering of seals, dies or stamps of state; of postage and revenue stamps.
6. Embezzlement by public officers; embezzlement by persons hired or salaried, to the detriment of their employers; larceny; obtaining money, valuable securities or other property by false pretenses, or receiving money, valuable securities or other property, knowing the same to have been embezzled, stolen or fraudulently obtained, when such act is made criminal by the laws of both countries and the amount of money or the value of the property fraudulently obtained or received, is not less than two hundred dollars or one thousand francs in gold.
7. Fraud or breach of trust by a bailee, banker, agent, factor, trustee, or other person acting in a fiduciary capacity, or director or member or officer of any company, when such act is made criminal by the laws of both countries and the amount of money or the value of the property misappropriated is not less than two hundred dollars or one thousand francs in gold.
8. Perjury; subornation of perjury.
9. Rape; abduction; kidnapping.
10. Wilful and unlawful destruction or obstruction of railroads which endangers human life.
11. Crimes committed at sea:
a. Piracy, by statute or by the law of nations.
b. Revolt, or conspiracy to revolt, by two or more persons on board a ship on the high seas against the authority of the master.

c. Wrongfully sinking or destroying a vessel at sea, or attempting to do so.

d. Assaults on board a ship on the high seas with intent to do grievous bodily harm.

12. Crimes and offenses against the laws of the United States of America for the suppression of slavery and slave trading.

Extradition is also to take place for participation in any of the crimes and offenses mentioned in this Treaty, provided such participation may be punished in the United States as felony and in Servia as crime or offense as before specified.

### Article III

Requisitions for the surrender of fugitives from justice shall be made by the Governments of the high contracting parties through their diplomatic agents, or in the absence of such through their respective superior consular officers.

If the person whose extradition is requested shall have been convicted of a crime or offense, a duly authenticated copy of the sentence of the Court in which he has been convicted, or if the fugitive is merely charged with crime, a duly authenticated copy of the warrant of arrest in the country where the crime has been committed, and of the depositions or other evidence upon which such warrant was issued, shall be produced.

The extradition of fugitives under the provisions of this Treaty shall be carried out in the United States and in Servia, respectively, in conformity with the laws regulating extradition for the time being in force in the State on which the demand for surrender is made.

### Article IV

Where the arrest and detention of a fugitive in the United States are desired on telegraphic or other information in advance of the presentation of formal proofs, complaint on oath, as provided by the statutes of the United States, shall be made by an agent of the Government of Servia before a judge or other magistrate authorized to issue warrants of arrest in extradition cases.

In the Kingdom of Servia the diplomatic or consular officer of the United States shall apply to the Foreign Office, which will immediately cause the necessary steps to be taken in order to secure the provisional arrest and detention of the fugitive.

The provisional detention of a fugitive shall cease and the prisoner be released if a formal requisition for his surrender, accompanied by the necessary evidence of criminality, has not been produced under the stipulations of this Treaty, within two months from the date of his provisional arrest and detention.

ARTICLE V

Neither of the high contracting parties shall be bound to deliver up its own citizens or subjects under the stipulations of this Treaty.

ARTICLE VI

A fugitive criminal shall not be surrendered if the offense in respect of which his surrender is demanded be of a political character, or if he proves that the requisition for his surrender has, in fact, been made with a view to try to punish him for an offense of a political character.

No person surrendered by either of the high contracting parties to the other shall be triable or tried, or be punished, for any political crime or offense, or for any act connected therewith, committed previously to his extradition.

If any questions shall arise as to whether a case comes within the provisions of this article, the decision of the authorities of the Government on which the demand for surrender is made, or which may have granted the extradition, shall be final.

ARTICLE VII

Extradition shall not be granted, in pursuance of the provisions of this Treaty, if legal proceedings or the enforcement of the penalty for the act committed by the person claimed has become barred by limitation, according to the laws of the country to which the requisition is addressed.

ARTICLE VIII

No person surrendered by either of the high contracting parties to the other shall, without his consent, freely granted and publicly declared by him, be triable or tried or be punished for any crime or offense committed prior to his extradition, other than that for which he was delivered up, until he shall have had an opportunity of returning to the country from which he was surrendered.

ARTICLE IX

All articles seized which are in the possession of the person to be surrendered at the time of his apprehension, whether being the proceeds of the crime or offense charged, or being material as evidence in making proof of the crime or offense, shall, so far as practicable and in conformity with the laws of the respective countries, be given up to the country making the demand, when the extradition takes place. Nevertheless, the rights of third parties with regard to such articles shall be duly respected.

ARTICLE X

If the individual claimed by one of the high contracting parties, in pursuance of the present Treaty, shall also be claimed by one or several other powers on account of crimes or offenses committed within their respective

jurisdictions, his extradition shall be granted to the State whose demand is first received: Provided, that the Government from which extradition is sought is not bound by treaty to give preference otherwise.

### Article XI

The expenses incurred in the arrest, detention, examination, and delivery of fugitives under this Treaty shall be borne by the State in whose name the extradition is sought: Provided, that the demanding Government shall not be compelled to bear any expense for the services of such public officers of the Government from which extradition is sought as received a fixed salary; and, provided, that the charge for the services of such public officers as receive only fees or perquisites shall not exceed their customary fees for the acts or services performed by them had such acts or services been performed in ordinary criminal proceedings under the laws of the country of which they are officers.

The present Treaty shall take effect on the thirtieth day after the date of the exchange of ratifications and shall not act retroactively.

The ratifications of the present Treaty shall be exchanged at Belgrade as soon as possible, and it shall remain in force for a period of six months after either of the contracting Governments shall have given notice of a purpose to terminate it.

In witness whereof, the respective Plenipotentiaries have signed this Treaty in duplicate and have hereunto affixed their seals.

Done at Belgrade this twenty-fifth (twelfth) day of October in the year of our Lord one thousand nine hundred and one.

|  |  |
|---|---|
| Charles S. Francis | [seal] |
| Dr. Michel Voüitch | [seal] |