IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| In the Matter of the Extradition of<br><br>DŽEVAD PAJAZETOVIĆ | Case No. 4:21-mc-00014<br><br>MEMORANDUM OPINION:<br>CERTIFICATION AS TO EXTRADITION<br>AND ORDER AS TO DETENTION |

## I. INTRODUCTION

This matter comes before the Court pursuant to a Complaint requesting a warrant to arrest Dževad Pajazetović ("Mr. Pajazetović") in accordance with an extradition treaty between the United States and Yugoslavia[1] and 18 USC § 3184, which was filed by the United States on February 24, 2021. ECF No. 1. The Federation of Bosnia and Herzegovina ("Bosnia") requested the extradition of Pajazetović on August 23, 2016.[2] ECF No. 25-1. Mr. Pajazetović was convicted of killing Derviš Okić ("Mr. Okić") in violation of Article 171 paragraph 2, line 6 of the Criminal Code of the Federation of Bosnia and Herzegovina. *Id.* at 7-9. Mr. Pajazetović was tried *in absentia* and convicted in the Cantonal Court of Bihać on October 20, 1999. *Id.* Mr. Pajazetović was arrested in the Southern District of Iowa within the jurisdiction of the United States on March 1, 2021. The Government seeks to extradite Mr. Pajazetović under an extradition treaty entitled the Treaty Between the United States of America and Servia for the

---

[1] The Federation of Bosnia and Herzegovina is a successor state to the treaty, as will be discussed in this Order.
[2] Although the original request for extradition was dated in August of 2016, the requesting documents were not certified as authenticate until September 23, 2016. ECF No. 25-1.

Mutual Extradition of Fugitives from Justice ("the Treaty"). ECF No. 25-3. After the dissolution of Yugoslavia, the Treaty applies to Bosnia as a successor state. *Id.* Under the Treaty, and pursuant to 18 USC § 3184, the Government seeks certification by this Court that Mr. Pajazetović is extraditable. This Opinion also will rule on Mr. Pajazetović's Motion for Release on Bond, filed on April 27, 2021. ECF No. 21.

The Court held an extradition hearing on May 14, 2021. The Government was represented by Assistant U.S. Attorney Virginia Bruner and Mr. Pajazetović was present and represented by his appointed counsel, Keith Rigg. The Court carefully has considered the exhibits, written submissions of the parties, and the arguments of counsel.

## II.     LEGAL PROCESS AND STANDARD FOR EXTRADITION

The extradition of a person to a foreign country is governed by 18 U.S.C. § 3184 and a treaty between the United States and the country requesting extradition. In the United States, the Judiciary's role in the extradition process is extremely limited. A judge of the United States holds a hearing to determine whether there is sufficient evidence to sustain the charge under the treaty. 18 U.S.C. § 3184. If the judge decides there is sufficient evidence, she is to certify her finding to the Secretary of State. *Id.* The Secretary of State makes the final determination as to whether the individual will be extradited. *Id.*

The statute (18 U.S.C. § 3184) provides that a magistrate judge may preside over the extradition hearing if she is authorized. *Id.* Under the United States District Court for the Southern District of Iowa's Local Rule 72(i)(19), the undersigned is authorized to conduct extradition proceedings. L.R. 72(i)(19). At the extradition hearing, both Parties agreed the undersigned has jurisdiction to conduct the proceedings and certify her findings to the Secretary of State pursuant to 18 USC § 3184. This matter is properly before the undersigned. The Court

has personal jurisdiction over an extraditee who is found within the jurisdiction of that Court. *Matter of Extradition of Pazienza*, 619 F. Supp. 611, 616 (S.D.N.Y. 1985). Mr. Pajazetović does not contest personal jurisdiction, and the Court finds it has personal jurisdiction to determine whether Mr. Pajazetović is extraditable.

Article I of the Treaty between Bosnia and the United States provides that persons who have been charged or convicted of crimes listed in the Treaty will be extradited. ECF No. 25-3, at 6-7. Article II of the Treaty between Bosnia and the United States enumerates extraditable crimes, which include both murder and voluntary manslaughter. *Id.* Article III of the Treaty provides that requests for extradition be made through appropriate diplomatic channels, including the submission of a duly authenticated copy of the sentence when an individual has been convicted. *Id.* at 8.

After an individual has been arrested pursuant to an extradition request, an extradition hearing is to be held. 18 U.S.C. § 3184. *See also Afanasjev v. Hurlburt*, 418 F.3d 1159, 1163-6-5 (11th Cir. 2005). The judicial officer presiding over the extradition hearing plays a limited role in the extradition process. *Id.* At the hearing, "[t]he magistrate does not inquire into the guilt or innocence of the accused; [s]he looks only to see if there is evidence sufficient to show reasonable ground to believe the accused guilty." *Id.* (internal quotation marks and citations omitted). Neither the Federal Rules of Criminal Procedure nor the Federal Rules of Evidence apply during the extradition hearing. *Id. See also* FED. R. CRIM. P. 1(a)(5)(A); FED. R. EVID. 1101(d)(3). The admissibility of evidence is at the presiding judicial officer's discretion. *Messina v. United States*, 728 F.2d 77, 80 (2d Cir. 1984).

If the extradition judge determines the evidence establishes the extraditee may be extradited, she will certify that finding to the Secretary of State. 18 U.S.C. § 3184. After the Court has

completed its "limited inquiry, the Secretary of State conducts an independent review of the case to determine whether to issue a warrant of surrender." *Martin v. Warden, Atlanta Pen*, 993 F.2d 824, 829 (11th Cir. 1993). If the Court certifies an individual is extraditable, she "shall issue [a] warrant for the commitment of the person so charged to the proper jail, there to remain until such surrender shall be made." [3] 18 U.S.C. § 3184. The Secretary of State, not the Court, makes the final decision about whether an individual will be surrendered for extradition. 18 U.S.C. § 3184; § 1386. The Secretary of State has broad discretion to determine whether extradition is appropriate, and it may consider facts/circumstances the magistrate judge cannot. *Martin*, 993 F.2d at 829.

### III.   FACTUAL BACKGROUND

Many of the facts underlying the extradition proceeding of Mr. Pajazetović are largely undisputed and are corroborated by witness statements. Additional facts will be discussed as necessary. On October 24, 1994, a dispute arose between Mr. Pajazetović and Mr. Okić near the border of Croatia and Bosnia. ECF No. 25-1, at 26-30. Mr. Okić was a military police officer at the time. *Id.* The two men had a disagreement over 200 liters of fuel that Mr. Okić attempted to confiscate from Mr. Pajazetović. *Id.* When Mr. Pajazetović did not turn over the fuel, Mr. Okić fired several shots in Mr. Pajazetović' direction. *Id.* At least one of these shots struck Mr. Pajazetović, as he was later treated for a wound to his leg. *Id.* Mr. Pajazetović fired back at Okić, fatally injuring him. *Id.*

Two years after the incident, in early 1996, Mr. Pajazetović was charged with murder by the District Military Court in Bihać for violating Article 36, Paragraph 2, Point 5 of the Criminal Code of the Federal Republic of Bosnia and Herzegovina. ECF No. 24-1, at 20-21. Mr.

---

[3] Detention will be discussed in greater detail in Subsection V.

Pajazetović was held in custody until a "main hearing" could be held. *Id.* At the main hearing, on April 10, 1996, the military court heard the testimony of Sead Kličić. *Id.* at 30-31. On the same day, Mr. Pajazetović was released from custody and his main hearing was "postponed for an indefinite period." *Id.* At the extradition hearing, Mr. Pajazetović represented that he had been acquitted after a trial in the military tribunal. The Government refutes that assertion. ECF No. 27-1, at 5-6. It is unclear from the record whether postponing the military proceedings for an indefinite period is akin to an acquittal. Regardless, extradition is not sought pursuant to the military proceeding.

At the extradition hearing, Mr. Pajazetović testified about his personal life. Approximately two years after Mr. Pajazetović was released from military custody, he, his wife, and two small children left Bosnia and moved to the United States in April of 1998. Mr. Pajazetović became a United States citizen in 2004. Mr. Pajazetović, his wife, his two children and two grandchildren live in the United States. Mr. Pajazetović has other family in the United States as well, including his brother. Up until his arrest, Mr. Pajazetović had been employed since shortly after arriving in the United States over twenty years ago. Mr. Pajazetović has no criminal history (aside from the underlying conviction) in Bosnia or in the United States except for one speeding ticket in the United States.

Bosnia seeks extradition pursuant to a proceeding that took place on October 20, 1999 in the Cantonal Court of Bihać, where Mr. Pajazetović was charged with murder in violation of Article 171, paragraph 2, line 6 of the Criminal Code of Federation of Bosnia and Herzegovina. ECF No. 25-1, at 26. The Bosnian Government described summoning Mr. Pajazetović for trial as "messy," and he was ultimately tried *in absentia*. ECF No 27-1. Counsel was present on behalf of Mr. Pajazetović. *Id.* Mr. Pajazetović was convicted and sentenced to fifteen years in prison.

ECF No. 25-1, at 26-30. A lawyer for Mr. Pajazetović appealed to the Supreme Court of Bosnia, which reduced his sentence to eleven years in prison on December 12, 2000. *Id.* at 20. Bosnia initially requested extradition of Mr. Pajazetović in September of 2016, and Bosnia supplemented its request in December of 2018. ECF No. 25-3, at 3-4.

## IV.    ANALYSIS AS TO EXTRADITION

On March 11, 2021, the United States filed the declaration of Tom Heinemann, an Attorney Advisor in the Office of Legal Adviser for the Department of State, who is charged with managing the extradition case of Mr. Pajazetović. ECF No. 17. Along with his declaration, Mr. Heinemann attached a copy of the Treaty and two Diplomatic Notes submitted by Bosnia in accordance with the Treaty. *Id.* Mr. Heinemann declared the documents submitted by Bosnia in support of extradition were certified in accordance with 18 U.S.C. § 3190 on September 23, 2016 by Corey M. Gonzales, Consul of the United States Embassy in Sarajevo. *Id.* At the time of the certification, Mr. Gonzales was the principal consular officer of the United States in Bosnia and Herzegovina. *Id.*

The documents certified by Mr. Gonzales include a finding of guilt by the Cantonal Court of Bihać and sentencing Mr. Pajazetović to fifteen years imprisonment; several witness statements that the Cantonal Court relied upon in making that finding; an opinion of the Supreme Court of Bosnia reducing the sentence to eleven years; and several other documents. ECF No. 14. There is a subsequent certification submitted by Scott A. Norris, Consul of the United States in Sarajevo, Bosnia, and Herzegovina, on November 28, 2018. *Id.* at 35. Those documents pertain to Mr. Pajazetović's identity. Each of the aforementioned documents were admitted into evidence at the extradition hearing. ECF Nos. 25-2 1, 3. Additionally, the Court admitted Government Exhibit 2 at the Hearing. ECF No. 25-2. Exhibit 2 is an email dated March 25, 2021 from Fata Nadarević,

whose email signature indicates he is the "Head of the Court" of the Cantonal Court of Bihać. *Id.* Fata Nadarević provided supplemental information regarding Mr. Pajazetović's claim that he had been acquitted by a military tribunal. *Id.* Although certification of this document was forthcoming, counsel for Mr. Pajazetović did not object to the document's authenticity or admission. The Court therefore admitted the document. The certified version of the document has now been filed. ECF No. 27-1.

Mr. Pajazetović submitted Exhibits A, B, C, and D, to which the Government did not object. The documents have been translated to English. Mr. Pajazetović testified to the authenticity of the documents at the Hearing, and the Court admitted them. The documents include several from the military tribunal; the record from the Cantonal Court of Bihać; and documentation from a recent appeal filed in the Constitutional Court of Bosnia and Herzegovina (received by the Constitutional Court on April 16, 2021). ECF No. 24, 1-4. The Court considers all the evidence duly submitted.

### A. REQUIREMENTS TO CERTIFY EXTRADITION

To certify that an individual may be extradited, the following requirements must be met: 1) the judicial officer has jurisdiction to conduct an extradition proceeding; 2) the Court has jurisdiction over the extraditee; 3) the person before the Court is the extraditee named in the request for extradition; 4) there is a valid extradition treaty in full force and effect; 5) the crime extradition is sought under is covered by that treaty; 6) there is competent legal evidence to support a finding of probable cause to believe extraditee committed the offense in question; and 7) all other treaty requirements have been met. *In re Rodriguez Ortiz*, 444 F. Supp. 2d 876, 881–82 (N.D. Ill. 2006) (citing *Fernandez v. Phillips*, 268 U.S. 311, 312 (1925). *See also Eain v.*

*Wilkes*, 641 F.2d 504, 508 (7th Cir.1981); *In re Extradition of Fulgencio Garcia*, 188 F.Supp.2d 921, 925 (N.D.Ill.2002)). The Court will address these requirements in turn.

### 1) Jurisdiction of the Judicial Officer

The undersigned explained *supra*, page 4, that she is authorized to hear the extradition proceeding under the federal statute and the local rules of this Court. At the extradition hearing on this matter, the Parties confirmed they had no objection to the undersigned conducting the proceedings or her authority to do so. As such, the undersigned reiterates she has proper jurisdiction to conduct proceedings and submit a certification under 18 U.S.C. § 3184.

### 2) Jurisdiction Over Mr. Pajazetović

Similarly, *supra*, page 4, the Court explained it has personal jurisdiction over Mr. Pajazetović as an individual who was arrested within its jurisdiction. At the hearing on this matter, the Parties confirmed they agree this Court has personal jurisdiction over Mr. Pajazetović. As such, the Court reiterates it has personal jurisdiction over Mr. Pajazetović.

### 3) Identity of Extraditee

The individual who appeared before this Court on May 15, 2021 is Dževad Pajazetović, the individual for whom extradition is sought. Mr. Pajazetović does not dispute that he is the individual Bosnia seeks. The Court finds that Mr. Pajazetović is the person named in the extradition request.

### 4) Existence of a Valid Extradition Treaty

There must be a valid extradition treaty between the requesting country and the United States for extradition hearings to proceed. *Sacirbey v. Guccione*, 589 F.3d 52, 57 (2d Cir. 2009). The declaration of Tom Heinemann explains that the Treaty, which went into effect in 1902, is valid as to Bosnia as a successor state of Yugoslavia. ECF No. 25-3. Mr. Pajazetović concedes

the Treaty is valid, and notes other courts have found the same. ECF No. 20, at 15. *See also Sacirbey*, 589 F.3d at 57 n.8. The Court finds that the Treaty is valid and in full force as between the United States and Bosnia and Herzegovina.

### 5) *Crime Covered by the Extradition Treaty*

The Treaty enumerates extraditable crimes. ECF No. 25-3, Art. II. Murder, including voluntary manslaughter, is listed as an extraditable crime. *Id.* Mr. Pajazetović concedes that this crime is listed in the Treaty, but he argues that the requirement of "dual criminality" has not been met. ECF No. 20, at 15. Mr. Pajazetović asserts that because the Bosnian definition of murder includes conduct that would not be criminalized as murder in the United States, it fails the test of dual criminality. *Id.* at 15-17.

The Bosnian definition of murder states, "[w]hoever deprives another person of a life, shall be punished by imprisonment of not less than five years." ECF No. 14, at 7. The Criminal Code provides for a minimum ten-year sentence where life has been deprived and some other circumstances is present (such as depriving a life of an official/military person on duty, as Mr. Pajazetović was convicted of). *Id.* Mr. Pajazetović correctly points out that the deprivation of life without some kind of mens rea would not rise to the level of murder in the United States as it does in Bosnia. ECF No. 20, at 15-17. *See also* 18 U.S.C. § 1111.

In response, the Government indicates the offense Mr. Pajazetović was convicted of is specifically listed in the treaty. ECF No. 23, at 6-8. Further, the underlying conduct in this case would be criminal in both jurisdictions. *Id.* The law does not require the offenses to have the same name or scope, but rather that " the particular act charged is criminal in both jurisdictions." *Collins v. Loisel*, 259 U.S. 309, 312 (1922). Both murder, 18 U.S.C. § 1111, and voluntary manslaughter, 18 U.S.C. § 1112, are criminal in the United States. The Court is satisfied that the

underlying conduct of the offenses in both countries is similar enough to satisfy the duel criminality requirement. Even if Mr. Pajazetović's conduct would not constitute murder in the United States, it could certainly fall within the purview of voluntary manslaughter.

### 6) *Probable Cause Mr. Pajazetović Committed the Offense*

Probable cause at this stage in the extradition process requires the Court to determine "whether there is competent evidence to support the belief that the accused has committed the charged offense." *Quinn v. Robinson*, 783 F.2d 776, 815 (9th Cir. 1986). A magistrate judge's finding of probable cause serves "a narrow function of indicating those items of submitted evidence on which the decision to certify extradition is based." *Id.* (citing *Caplan v. Vokes*, 649 F.2d 1336, 1342 n.10 (9th Cir. 1981) (internal quotations omitted)). The probable cause standard at an extradition hearing is similar to the standard used in federal preliminary proceedings. *Hoxha v. Levi*, 465 F.3d 554, 561 (3d Cir. 2006). Properly authenticated documents alone can support a finding of probable cause that the extraditee committed the offense in question. *United States v. Wiebe*, 733 F.2d 549, 553 (8th Cir. 1984).

The Court may consider "explanatory evidence" that would eliminate probable cause, but not "contradictory evidence" that conflicts with the Government's evidence. *Hoxha*, 465 F.3d at 561. The presiding judicial officer has discretion to determine whether evidence is considered explanatory or contradictory. *Id. See also Matter of Sindona*, 450 F. Supp. 672, 685 (S.D.N.Y. 1978). The Court cannot consider defenses, such as self-defense, at the extradition hearing. *Charlton v. Kelly*, 229 U.S. 447, 462 (1913). The role of the judiciary when determining probable cause to certify extradition is very limited; it is for the State Department to exercise discretion as to whether an individual should be extradited. *Martin*, 993 F.2d at 829.

Some courts consider a conviction, including one made *in absentia*, sufficient to establish probable cause on its own. *Esposito v. I.N.S.*, 936 F.2d 911, 914 (7th Cir. 1991); *Gouveia v. Vokes*, 800 F. Supp. 241, 245 (E.D. Pa. 1992). Other courts treat an *in absentia* conviction as the equivalent of a criminal charge and consider other evidence. *Haxhiaj v. Hackman*, 528 F.3d 282, 285 (4th Cir. 2008); *In re Extradition of Nunez-Garrido*, 829 F. Supp. 2d 1277, 1287 (S.D. Fla. 2011). In the present case, the Court will treat the *in absentia* conviction as the equivalent of a criminal charge, and it will proceed with the underlying probable cause analysis.

Mr. Pajazetović argues probable cause is eliminated by the witness statement of Sead Kličić at the military court proceeding. ECF No. 20, at 17-19. Mr. Kličić was the Commander of a brigade at the time of the incident, with authority over Mr. Okić. ECF No. 24-1, at 30-34. At the military "main public hearing" on April 10, 1996, Mr. Kličić gave a statement that Mr. Okić was not acting within the scope of his official duties at the time of his death. *Id.* Upon receipt of that information, the military court released Mr. Pajazetović from custody and postponed his main hearing indefinitely. *Id.* Mr. Pajazetović asserts this undermines his guilt under subsection 2 of the Bosnian murder statute, which punishes the killing of a military official acting in his official capacity. ECF No. 20, at 19.

The Government objects to the Court considering Sead Kličić's testimony, as it contradicts evidence put on at the civilian trial. The finding of the Cantonal Court of Bihać dated October 20, 1999 states that a witness, Kličić Senad, provided a statement that Mr. Okić was "performing his duty of military police officer" when the incident occurred. ECF No. 25-1, at 29. The witness statements do appear to contradict themselves. The Court will not make credibility determinations as to which may be correct. Taken as a whole, the Government presented

evidence that supports a finding of probable cause that Mr. Pajazetović committed the criminal offense at issue.

Importantly, the key underlying facts which this Court can consider do not appear to be disputed. Mr. Pajazetović does not deny he shot Mr. Okić, and indeed the evidence clearly points to the fact that he did. As discussed, *supra* subsection 6, even if Mr. Pajazetović could refute probable cause as to the crime of murdering an individual while he was acting in an official capacity, there is probable cause to show he committed voluntary manslaughter. Voluntary manslaughter is defined in the United States Code as "the unlawful killing of a human being without malice . . . [u]pon a sudden quarrel or heat of passion." 18 U.S.C. § 1112. The Court cannot balance self-defense in its limited analysis but the State Department can. At the very least, from the facts and evidence which this Court can consider, there is probable cause to believe Mr. Pajazetović committed an extraditable crime under the Treaty.

### 7) *Other Treaty Requirements Have Been Met*

Neither party brought to the Court's attention other Treaty requirements that need to be fulfilled. Article IV and VII of the Treaty prohibit extradition if the offense surrender is demanded under is of a "political character," for political crimes, or crimes barred by limitations. ECF No. 25-3, at 9. Mr. Pajazetović stated he did not have any information that indicates he falls into any of those categories. ECF No. 20, at 17.

The Court agrees all other Treaty requirements have been met, but the Court finds it useful to highlight one provision of the Treaty neither Party mentioned. Article V of the Treaty provides neither country "shall be bound to deliver up its own citizens or subjects under the stipulations of this Treaty." ECF No. 25-3, at 9. *See also Sacirbey*, 589 F.3d at 57. As Mr. Pajazetović is a United States citizen, the Government is not obligated to extradite him under the

Treaty. Again, that determination is not within the authority of the Court. *Id.* The Secretary of State has discretion as to whether Mr. Pajazetović will be extradited or not.

### B. CERTIFICATION OF EXTRADITION TO THE SECRETARY OF STATE

In sum, the Court has found 1) it has jurisdiction to conduct the extradition proceeding; 2) it has jurisdiction over Dževad Pajazetović; 3) the person before the Court is Dževad Pajazetović; 4) there is a valid extradition treaty in full force and effect; 5) the crime extradition is sought under is covered by that treaty; 6) there is competent legal evidence to support a finding of probable cause to believe Dževad Pajazetović committed the offense in question; and 7) all other treaty requirements have been met. Accordingly, the Court **certifies** to the Secretary of State that Dževad Pajazetović may be extradited under the Extradition Treaty between the United States and Bosnia.

### V.     ANALYSIS AS TO DETENTION

On March 2, 2021, the Government requested Mr. Pajazetović be detained while the Secretary of State decides whether to extradite him. ECF No. 8, at 16. The Government argues Mr. Pajazetović is a flight risk and a danger to the community, and there are no "special circumstances" that warrant release on bond. *Id.* at 22-23. On April 27, 2021, Mr. Pajazetović moved for release on bond. ECF No. 21. Mr. Pajazetović argues he should be released because he is not a flight risk or a danger to community; and as for "special circumstances," Mr. Pajazetović argues he is likely to succeed on the merits of his extradition proceeding. *Id.*

The federal extradition statute does not provide for bail; however, federal trial courts have the authority to release extraditees on bond. *Wright v. Henkel*, 190 U.S. 40, 62 (1903). Given the foreign policy implications of extradition, there is a presumption against releasing an extraditee. *Matter of Extradition of Russell*, 805 F.2d 1215, 1216 (5th Cir. 1986); *Matter of Extradition of*

*Sutton*, 898 F. Supp. 691, 694 (E.D. Mo. 1995). The Court may grant bond if the extraditee shows he is not a flight risk or a danger to the community **and** presents "special circumstances" which show he should be released. *Matter of Requested Extradition of Kirby*, 106 F.3d 855, 863 (9th Cir. 1996), *as amended* (Feb. 27, 1997); *In re Extradition of Garcia*, 761 F. Supp. 2d 468, 471 (S.D. Tex. 2010). Some courts require this showing by a clear and convincing evidence standard, *United States v. Ramnath*, 533 F. Supp. 2d 662, 666 (E.D. Tex. 2008), while others apply a preponderance of the evidence standard. *In re Extradition of Santos*, 473 F. Supp. 2d 1030, 1036 (C.D. Cal. 2006). Release in an extradition case is a fact-specific inquiry left to the discretion of the presiding judge. *Garcia*, 761 F. Supp. 2d at 472.

The case law surrounding "special circumstances" is scattered, and there is no solid definition of what constitutes a special circumstance. *Id.* Bail decisions in extradition cases have been described as "contradictory and irreconcilable." *Id.* The situation of the extraditee must be truly unique to warrant release. *Ramnath*, 533 F. Supp. 2d at 665. Although it does not govern in extradition proceedings, some courts rely on guidance from the Bail Reform Act's "special circumstances" justifying release. *Id. See also Garcia*, 761 F. Supp. 2d at 477-78. As the *Ramnath* court did, the Court finds it useful to look to Bail Reform Act factors that may weigh toward release including:

> (1) the nature and circumstances of the offense charged (including whether the alleged offense is a crime of violence); (2) the weight of the evidence; (3) the history and characteristics of the person; and (4) the nature and seriousness of danger to any person or the community that would be posed by the person's release.

*Ramnath*, 533 F. Supp. 2d at 667. The Court will analyze these factors as they apply to Mr. Pajazetović, subsuming the flight risk/danger analysis into one portion.

First, the Court addresses whether Mr. Pajazetović is a flight risk or a danger to the community. Contrary to the Government's assertions, he is obviously not a flight risk or a danger to the community. Mr. Pajazetović has been in this country, in the Des Moines area, for over twenty years. He has been employed at the same business for all of those years. Mr. Pajazetović has a wife, two children, two grandchildren, and other family members in the United States. Notably, Mr. Pajazetović has no criminal history in the United States aside from a speeding ticket. His only criminal history in Bosnia is the underlying conviction from over 20 years ago. Mr. Pajazetović is not a danger to the community.

Mr. Pajazetović is not a flight risk. The Government asserts that because he fled Bosnia while he had pending criminal charges, he is a risk of fleeing again. ECF No. 8, 22-23. Mr. Pajazetović testified under oath that he was found innocent of the charges against him. Whether that was procedurally correct is another matter, but the Court has no reason to doubt Mr. Pajazetović's belief. Further, Mr. Pajazetović remained in Bosnia for two-years after the military court released him. Given this delay, the evidence does not support that Mr. Pajazetović was fleeing Bosnia to avoid criminal responsibility. The Court also notes the record does not reflect any travel restrictions on Mr. Pajazetović following his release from the military tribunal, presumably he was free to leave the country. The Court finds Mr. Pajazetović is not a flight risk, nor is he a danger to the community. The first factor weighs in favor of release.

Second, the Court looks to the nature and circumstances of the offense charged. Murder of an individual acting in their official capacity is a serious crime. The Court will not wade into areas that are at the discretion of the Secretary of State, but the Court simply notes the Secretary of State may consider that Mr. Pajazetović committed this crime in self-defense. The evidence before the Court suggests Mr. Okić fired his weapon at Mr. Pajazetović first, and Mr. Pajazetović

was indeed wounded during the incident. The Court also notes that the incident took place nearly thirty years ago. Two sentences related to this crime could have been served in the time since it happened. Regardless, it is not within the purview of this Court to consider defenses. The Court finds the second factor weighs against release.

Third, the Court looks to the weight of the evidence. Again, the Court will not overstep its bounds and make determinations that should be left to the Secretary of State. Instead, the Court will discuss Mr. Pajazetović's pending appeal in the Bosnian Supreme Court and how that weighs into its detention decision. Mr. Pajazetović has appealed his conviction to the Bosnian Supreme Court because he was tried *in absentia* in violation of the Constitution of Bosnia and Article 6 of the European Convention.[4] ECF No. 24-3. The Court has reviewed the English translation of the appeal, and it appears to have some merit. Certainly Mr. Pajazetović's pending appeal is unique to his situation. If the Supreme Court of Bosnia were to overturn his conviction, there would be no basis upon which to extradite him. The Court finds that the pending appeal weighs in favor of release.

Fourth, the Court will consider the history and characteristics of Mr. Pajazetović. Much of his history has been discussed above. Mr. Pajazetović is a family man and a productive citizen of the United States. Outside of the event that took place in October of 1994, he has no history of violence. The Court finds that the fourth factor weighs in favor of Mr. Pajazetović's release.

Under either the preponderance or clear and convincing standard, the Court finds Mr. Pajazetović is not a danger to the community or a flight risk, and that "special circumstances" warrant his release on bond. As the Government has pointed out in its brief, Courts generally only find special circumstances based on a confluence of factors not one single factor. The Court

---

[4] As of the date of this Opinion, this Court has not been provided with an update on the appeal and presumes that the appeal remains pending.

believes that such a confluence of factors exits in this case. Mr. Pajazetović is a longtime resident of Iowa with strong ties to the community; he is not a flight risk or a danger to the community. The Court reiterates that several circumstances are unique to Mr. Pajazetović's situation and taken together create special circumstances warranting release on conditions: the lengthy amount of time since the crime was committed; the pending appeal in Bosnia; the fact that the United States is not obligated to extradite Mr. Pajazetović as a United States citizen; he is a nonviolent longtime resident of the community; and that the Secretary of State may find Mr. Pajazetović acted in self-defense. Several of these factors suggest the Secretary of State may chose not to extradite Mr. Pajazetović. The only factors that support detention are a presumption against release and the severity of the crime in question, and the Court determines that the aforementioned facts significantly mitigate those factors.

The Court understands the importance of the United States fulfilling its obligations to foreign nations. With that in mind, the Court is confident that if the Secretary of State chooses to extradite Mr. Pajazetović, he will comply with any requests made of him. Mr. Pajazetović has overcome the presumption of detention against him. It is hereby **ordered** that Mr. Pajazetović be released under conditions provided by the Government.

## VI.   CONCLUSION

For the reasons stated in Subsection IV, the Court **CERTIFIES** that under 18 U.S.C. § 3184 and the Treaty between the United States and the Federation of Bosnia and Herzegovina a warrant may be issued for Dževad Pajazetović's surrender to Bosnia. The proffered evidence is sufficient to sustain the charges against Dževad Pajazetović.

The Clerk of the United States District Court for the Southern District of Iowa shall forward this Certification and Order, together with all formal extradition documents filed; all

briefs, pleadings, exhibits filed; and a certified copy of all testimony and hearings and all orders of the Court to the Secretary of State, Department of State, to the attention of the Office of the Legal Advisor.

For the reasons stated in Subsection V, the Court **ORDERS** Dževad Pajazetović be released from custody while the Secretary of State considers the final disposition of this matter. By no later than **1:00 p.m. on July 16, 2021**, counsel for Mr. Pajazetović and counsel for the Government, in consultation with the United States Probation Office, shall propose to the Court a set of conditions for release of Mr. Pajazetović pending the final determination on extradition by the Secretary of State. Those conditions shall include firearms restrictions, travel restrictions and location monitoring with GPS.

IT IS SO ORDERED.

Dated July 13, 2021.

Helen C. Adams
Chief U.S. Magistrate Judge