IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | |
|---|---|
| In the Matter of the Extradition of ) | |
| ) | Case No. 4:21-MC-014 |
| DŽEVAD PAJAZETOVIĆ ) | |
| ) | |
| ) | |

**MOTION FOR STAY OF RELEASE AND RECONSIDERATION OF DETENTION ORDER**

The United States, in fulfilling its treaty obligations to Bosnia and Herzegovina ("Bosnia"), respectfully moves for reconsideration of the Court's order releasing the fugitive in this case, Dževad Pajazetović ("Pajazetović"). (DCD 28.) The Court lacks authority to release a fugitive once the Court certifies that he is extraditable under 18 U.S.C. § 3184.

**A.   18 U.S.C. § 3184 Requires Detention of a Fugitive After Certification of His Extraditability**

The Court's authority to conduct international extradition proceedings is set forth in the federal extradition statute, 18 U.S.C. § 3184. In pertinent part, this statute requires that after certifying a fugitive as extraditable, the Court "*shall* issue [a] warrant for the commitment of the person so charged to the proper jail, *there to remain* until such surrender shall be made." *Id.* (emphasis added.) Notably, Pajazetović does not address this language in his motion for release. (DCD 21.)

The mandatory language of Section 3184 expressly, and without exception, requires the commitment of a fugitive to federal custody for the duration of the time following certification through surrender to the requesting country. The statute

1

thus unambiguously renders bail unavailable to a fugitive who has been certified as extraditable. *See In re the Matter of the Extradition of Markey*, No. 3:09-MJ-75 CAN, 2010 WL 610975, at *4 (N.D. Ind. Feb. 18, 2010) (noting that "[t]he law is clear" that the court lacks authority to release a fugitive after certification); *see also Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992) ("[I]n interpreting a statute a court should always turn to one cardinal canon before all others [C]ourts must presume that a legislature says in a statute what it means and means in a statute what it saysthere.").

**B.     The "Special Circumstances" Test Does Not Apply Once Extradition Is Certified**

In contrast to its express provision for post-certification detention, Section 3184 is silent on the issue of whether a fugitive must be detained prior to certification. The decision in *Wright v. Henkel*, 190 U.S. 40 (1903), along with the subsequent evolution of the "special circumstances" test, addresses this issue, establishing the conditions under which a fugitive may be released on bail during the pre-certification stage of an extradition proceeding. *Wright* was a pre-certification casein which a fugitive applied for *habeas* relief following the denial of his bail application but prior to a finding of extraditability. 190 U.S. at 57 (explaining that "the writ was applied for in this instance before the commissioner had entered upon the examination [of whether the fugitive was extraditable]"); *see also, e.g.*, *In re Extradition of Russell*, 647 F. Supp. 1044, 1046 (S.D. Tex. 1986) (*Wright* was a pre-certification case), *aff'd*, 805 F.2d 1215 (5th Cir. 1986). In that

case, the Supreme Court held that special circumstances could permit the granting of bail notwithstanding the absence of a statute specifically authorizing bail. *Wright*, 190 U.S. at 63.

Notably, the Court did not purport to extend its holding to the post-certification stage of extradition and, in fact, recognized that doing so would be "inconsistent" with the federal extradition statute. *See id.* at 62 ("[Section] 5270 of the Revised Statutes [the predecessor of the current extradition statute] . . . is inconsistent with its allowance [of bail] after committal, for it is there provided that, if he finds the evidence sufficient, the commissioner of judge 'shall issue his warrant for the commitment of the person so charged to the proper jail, there to remain until suchsurrender shall be made'"). The Court further explained that:

> The demanding government, when it has done all that the treaty and the law require it to do [as confirmed upon certification], is entitled to the delivery of the accused on the issue of the proper warrant, and the other government is under obligation to make the surrender; an obligation which it might be impossible to fulfil if release on bail were permitted. The enforcement of the bond, if forfeited, would hardly meet the international demand; and the regaining of the custody of the accused obviously would be surrounded with serious embarrassment.

*Id*.

Thus, while *Wright* may allow for the granting of pre-certification bail, it does not undermine the prohibition on post-certification bail, as governed by the "shall issue" and "there toremain" language of Section 3184.

To the extent that in some cases certain courts, including the Ninth Circuit,

3

have entertained bail requests after a certification of extraditability, the government respectfully submits that those cases incorrectly ignored the distinction between the pre- and post-certification stages of extradition, as well the limited applicability of the special circumstances test to only pre- certification proceedings. *See, e.g.*, *United States v. Salerno*, 878 F.2d 317 (9th Cir. 1989) (applying special circumstances test when considering fugitive's motion for bail during appeal of certification order); *see also Beaulieu v. Hartigan*, 554 F.2d 1, 1-2 (1st Cir. 1977) (same). There is no indication in those cases that the government argued that the "special circumstances" test was inapplicable post certification. Thus, the United States submits that the language in those cases applying the special circumstances test, without any analysis of the applicability thereof, is merely dicta. *See Webster v. Fall*, 266 U.S. 507, 511 (1925) ("Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents.").

**C.   U.S. Foreign Interests Support Detention of a Fugitive Post Certification**

The prohibition against bail following certification of extraditability is further supported by the United States' interests in meeting its treaty obligations. Specifically, the ability of the United States to deliver fugitives pursuant to extradition requests made by its treaty partners has significant international law implications. Just as the United States expects other countries to honor their obligation to return fugitives when the applicable treaty's requirements have been

met, other countries similarly expect the United States to honor its reciprocal obligation to extradite fugitives. The United States obviously could not fulfill this obligation if a fugitive were to flee after being released on bond, an event that becomes all the more likely once a fugitive's surrender becomes more imminent. *See Wright*, 190 U.S. at 62; *see also United States v. Leitner*, 784 F.2d 159, 160-61 (2d Cir. 1986) (the government has an overriding foreign relations interest in complying with treaty obligations and producing extradited persons). It is important that the United States be regarded in the international community as a country that honors its agreements in order to be in a position to demand that other countries meet their obligations to the United States. Such reciprocity would be defeated if a fugitive fled after being released on bond.

Moreover, general considerations warranting the granting of bail to a fugitive before certification are no longer compelling after certification, when all that remains in the extradition process is for the Secretary of State to decide whether to surrender the fugitive. Pursuant to 18 U.S.C. § 3188, a fugitive may seek to be released from custody if he is not surrendered within two calendar months of certification. Thus, although the fugitive's detention may be prolonged by the stay of a certification order pending a fugitive's application for *habeas* relief, the prospect of indefinite detention, which may exist prior to certification, is no longer an issue.
5

### D. Post-Certification Detention Does Not Create Constitutional Concerns

Post-certification detention is not indefinite, but rather is limited in two ways. First, Section 3184 itself provides that post-certification detention lasts only "until . . . surrender [of the fugitive] shall be made." Second, 18 U.S.C. § 3188 provides that where a fugitive has been "committed for rendition to a foreign government to remain until delivered up in pursuance of a requisition [under Section 3184]," but is not surrendered within "two calendar months" following the final adjudication of "such commitment," he may be released from custody absent "sufficient cause" for his continued detention. 18 U.S.C. § 3188 (emphasis added); *see Jimenez v. U.S. Dist. Ct. for S. Dist. of Fla.*, 84 S. Ct. 14, 18 (1963) (Goldberg, J., in chambers). The very purpose of this statute is "to ensure prompt action by the extraditing government as well as by this government so that the accused would not suffer incarceration in this country or uncertainty as to his status for long periods of time through no fault of his own." *Jimenez*, 84 S. Ct. at 18. Accordingly, detention pursuant to the mandate of Section 3184 would be limited and not cause any constitutional concern. Indeed, in *Jennings v. Rodriguez*, 138 S. Ct. 830 (2018), the Supreme Court interpreted a similar statute and held that it prohibited bail without implicating the constitutional avoidance doctrine. There, the Court confronted a provision of the Immigration and Nationality Act, 8 U.S.C. § 1226(c), which states that the Attorney General "shall take [certain aliens] into custody." *Rodriguez*, 138 S. Ct. at 846. The Court held that this statutory language is "clear"

6

and "expressly prohibits release from . . . detention," *id.*, that is, it precludes an alien's "release[] on bond," despite the lack of any explicit statutory reference to "bond," *id.* at 850-51. The Court noted that Section 1226(c) "does not on its face limit the length of the detention it authorizes," but concluded that the statute mandates detention for the term set forth in Section 1226(a), *i.e.*, "pending a decision on whether the alien is to be removed from the United States." *Id.* at 846. Section 3184's mandate that a fugitive "remain" in "jail . . . until . . . surrender shall be made," within the two-calendar month limit imposed under Section 3188, is even clearer than Section 1226(c)'s mandate.

The mandate for detention in Section 3184 is further reinforced by the fact that Congress expressly crafted a singular exception to it, as set forth in 18 U.S.C. § 3188. The Supreme Court in *Rodriguez* applied the same logic when interpreting Section 1226(c), which similarly provides only one express exception to detention, concluding that this exception demonstrates that "the statute expressly and unequivocally imposes an affirmative prohibition on releasing detained aliens under any other conditions." 138 S. Ct. at 847 (emphasis in original).

### E. Even If the Special Circumstances Test Did Apply, the Fugitive Cannot Satisfy It

Even if bail were available after certification, the fugitive could not satisfy the extracting standard for obtaining bail established under *Wright*. In order to overcome the general presumption against bail under *Wright*, a fugitive has the

burden of demonstrating that: (1) he or she will not flee or pose a danger to the community, and (2) there are "special circumstances" justifying release.[1] *See, e.g.*, *Salerno*, 878 F.2d at 318; *In re Extradition of Russell*, 805 F.2d 1215, 1216 (5th Cir. 1986). Neither prong is met here.

First, the fugitive is by definition a high flight risk. Fugitives in general may be considered flight risks by definition because they have committed a crime in a foreign jurisdiction, which they subsequently left, thereby avoiding prosecution. *See In re Extradition of Garcia*, 761 F. Supp. 2d 468, 471 (S.D. Tex. 2010). Here, the fugitive has the greatest incentive to flee after certification, when his surrender is no longer just a possibility but rather is far more certain than before certification.

Moreover, even if the fugitive could demonstrate that he is not a flight risk, he cannot demonstrate the existence of a "special circumstance." *See In re Extradition of Mainero*, 950 F. Supp. 290, 294 (S.D. Cal. 1996) ("Special circumstances must be extraordinary and not factors applicable to all defendants facing extradition."); *In re Mitchell*, 171 F. 289, 289 (S.D.N.Y. 1909) (concluding that bail should granted "only in the most pressing circumstances, and when the

---

[1] "[T]here is disagreement among the federal district courts regarding the burden of persuasion that a potential extraditee must satisfy [Some] courts require the person subject to international extradition to overcome the presumption against bail by presenting clear and convincing evidence that bail is warranted. . . . [and t]here is a negligible minority of courts that have adopted a preponderance of the evidence standard. *In re Extradition of Garcia*, 761 F. Supp. 2d 468, 481 (S.D. Tex. 2010).

requirements of justice are absolutely peremptory"). While Pajazetović claimed that he believed he was found innocent, that testimony is contradicted by his own documents he presented to the Court, which showed that he was not acquitted, and that he appealed his conviction and sentence before he was ever arrested in the United States. Even if he somehow thought he was acquitted, he now knows that he was convicted of murder, that conviction was upheld on appeal, and that he is a fugitive to be extradited. He is not positioned in the same manner as he was pre-certification.

## CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court stay its order of release, and order Pajazetović remain in detention pending his extradition to Bosnia.

        Respectfully submitted,

        Richard D. Westphal
        Acting United States Attorney

By:  */s/ Virginia M. Bruner*
        Virginia M. Bruner
        Assistant United States Attorney

        U. S. Courthouse Annex, Suite 286
        110 East Court Avenue
        Des Moines, Iowa  50309
        Tel:  (515) 473-9300
        Fax:  (515) 473-9292
        Email:  Virginia.Bruner@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on July 14, 2021, I
electronically filed the foregoing with the
Clerk of Court using the CM ECF system.  I hereby
certify that a copy of this document was served
on the parties or attorneys of record by:

\_\_\_\_U.S. Mail  _____  Fax _____Hand Delivery

  X  ECF/Electronic filing      \_\_\_Other


UNITED STATES ATTORNEY

By: /s/ *Virginia M. Bruner*
    Assistant U.S. Attorney